UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ALAN FISHMAN,

                      Plaintiff,                      **MEMORANDUM & ORDER**

            -against-                      10 CV 3231 (DRH) (AKT)

THE COUNTY OF NASSAU, NASSAU
COUNTY CIVIL SERVICE COMMISSION,
THE NASSAU COUNTY LEGISLATURE,
WILLIAM MULLER, PETER SCHMITT,
and EDWARD P. MANGANO,

                      Defendants.

--------------------------------------------------------X
**APPEARANCES:**

**LAW OFFICES OF LOUIS D. STOBER, JR., LLC**
Attorneys for Plaintiff
350 Old Country Road, Suite 205
Garden City, New York 11530
By:    Louis D. Stober, Esq.
       Sheila S. Hatami, Esq.

**OFFICE OF THE NASSAU COUNTY ATTORNEY**
Attorneys for Defendants
John Ciampoli
Nassau County Attorney
One West Street
Mineola, New York 11501
By:    Michelle M. Faraci, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Alan Fishman commenced this action seeking recovery based upon defendants'

alleged violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1988.

Plaintiff also alleges that defendants violated the New York State Constitution and New York

State Labor Law § 201-d, and asserts state law claims for intentional and negligent infliction of

emotional distress.

Presently before the Court is defendants' motion to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint and are presumed true for purposes of this motion.

Plaintiff Alan Fishman is a resident of Nassau County, New York, and was employed by defendants County of Nassau (the "County") and County of Nassau Legislature (the "Legislature"). (Compl. ¶¶ 4, 7.) At all relevant times, plaintiff was also a member of the Nassau County Democratic Party and Nassau County Democratic Committee. (*Id.*) The County is a municipal corporation existing under the laws of the State of New York, with offices in Mineola, New York. (*Id.* ¶ 5.) The Legislature is also a municipal corporation existing under New York State law with offices in Mineola, New York. (*Id.* ¶ 7.) Defendant Nassau County Civil Service Commission (the "Commission") is a municipal corporation subject to the laws of the state of New York, with an office located in Hempstead, New York. (*Id.* ¶ 6)

Defendant Edward P. Mangano ("Mangano") is a member of the Nassau County Republican Committee ("Republican Committee") and was a Nassau County legislator until he became the Nassau County Executive on January 1, 2010. (*Id.* ¶ 10.) Defendant William Muller ("Muller") is also a member of the Nassau County Republican Committee and was appointed to the position of Clerk of the Nassau County Legislature by Mangano. (*Id.* ¶ 8.) Defendant Peter Schmitt ("Schmitt") is also a member of the Nassau County Republican Committee and is alleged to have been appointed by Mangano to the position of Presiding Officer of the Nassau

County Legislature.[1]  (*Id.* ¶ 9.) Finally, Joseph Mondello ("Mondello") is the head of the Republican Committee of Nassau County. (*Id.* ¶ 11.)[2]

## I.    *Plaintiff's Employment with the Legislature*

Plaintiff began his employment with the Legislature in December 2006 in the position of "Records Clerk," and he worked in that capacity until April 2008. (*Id.* ¶ 16.)  Plaintiff's duties as Records Clerk were "clerical and administrative," and included "making copies, scanning documents, fixing audio-visual equipment, data entry . . . filling water pitchers, delivering office supplies, and acting as an aid to all nineteen Nassau County legislators and staff regardless of party affiliation." (*Id.* ¶ 17.)  In or about April 2008, plaintiff's title was changed to Special Assistant to the Clerk but plaintiff continued to perform the same tasks that he performed as Records Clerk.  (*Id.* ¶ 18.)  The position of Special Assistant to the Clerk of the Legislature is a bi-partisan position for which no party affiliation is required. (*Id.* ¶ 43.)  According to plaintiff, he was a "model employee" at all times during his employment and was never disciplined or reprimanded in any way. (*Id.* ¶ 34.)

At all times during his employment, plaintiff was active in the Nassau County Democratic Committee (the "Democratic Committee") and became a Democratic Committeeman in 2007. (*Id.* ¶¶ 19, 22.) As a Democratic Committeeman, plaintiff's duties included, but were not limited to, "actively campaigning for Democratic candidates and participating in fund-raising activities on behalf of the Nassau County Democratic Committee." (*Id.* ¶ 21.)  As a Democratic

---

[1]    The Court notes that, pursuant to Section 106(1) of the Nassau County Charter, the Presiding Officer of the Nassau County Legislature is selected by a vote of its legislators.

[2]    Mondello is not named in the caption as a defendant.

Committee member, plaintiff associated with Jay Jacobs, the head of the Democratic Committee, Thomas Suozzi, the former Nassau County Executive, and numerous other Democratic Committee members. (*Id.* ¶¶ 24, 25.)

## II.     Plaintiff's Employment is Terminated

Plaintiff alleges that when Schmitt was appointed to the position of Presiding Officer of the Legislature, on or about January 4, 2010, he instructed Muller to fire plaintiff based on his status in the Democratic Committee. (*Id.* ¶ 29.)  Muller allegedly followed this instruction and terminated plaintiff's employment on or about February 22, 2010. (*Id.* ¶ 30.) Plaintiff alleges that Schmitt's "directive ultimately came from Republican party headquarters and Mondello." (*Id.* at ¶ 27.)  Plaintiff further alleges that Mangano and the Commission knew that plaintiff's termination was based on his political affiliation, but allowed it to happen anyway. (*Id.* ¶ 33.)

Prior to his termination, plaintiff "learned that the head of the Republican Party had ordered that Democratic Committee [members] be terminated." (*Id.* ¶ 37.)  In particular, plaintiff alleges that Ed Ward, "the spokesman for Mr. Schmitt," told plaintiff that, "We don't keep Committee People." (*Id.* ¶ 38.)  Plaintiff's position was filled by a member of the Republican Committee who also is a member of the Republican Club in Lynbrook.  (*Id.* ¶ 41.)

Since plaintiff's termination, the Nassau County Legislative Clerk Central Staff has hired "at least four more individuals, all of whom are affiliated with the Nassau County Republican Committee." (*Id.* ¶ 42.)

## III.     Alleged Injuries

Plaintiff seeks payment of his accumulated and unused sick, personal and vacation time, as well as front and back pay.  (*Id.* ¶ 48(e), (f).)  In addition, at the time of plaintiff's termination,

he had accrued 55 days of sick leave and other entitlements, for which he claims the County has not paid him. (*Id.* ¶ 39.)  Plaintiff also alleges that defendants' actions have caused him "severe emotional distress, mental anguish, physical injury, anxiety, and depression . . . ." (*Id.* ¶ 44.) Plaintiff claims that defendants' actions have caused him trouble sleeping and socializing, pains in his stomach and chest, and difficulty concentrating.  (*Id.* ¶ 45.) As a result, plaintiff has sought professional medical attention. (*Id.* ¶ 46.)

## *DISCUSSION*

### I.    *Legal Standard for Motion to Dismiss*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted).   Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court

provided further guidance, setting forth a two-pronged approach for courts deciding a motion to

dismiss. First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1940, 1950. "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* Thus, "[t]he bare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at

1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the

allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to

the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.

2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

Defendants advance several arguments as to why each of plaintiff's claims should be dismissed. The Court will address each of these arguments in turn.

## II.    *Causes of Action Pursuant to 42 U.S.C. § 1983*

A plaintiff may assert a cause of action pursuant to Section 1983 against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2006). Because "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred' . . . [t]he first step in [analyzing] any such claim is to identify the specific [federal] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Defendants move to dismiss plaintiff's First Amendment association claim (Count I) and Fourteenth Amendment due process claim (Count II).

### A.    *Plaintiff has Adequately Pled a Violation of his First Amendment Rights*

In Count I of the Complaint, plaintiff alleges that defendants violated his First Amendment right to freedom of association by terminating his employment "on the basis of and in retaliation for his political affiliation, speech, and activities." (Compl. ¶¶ 51, 52.) Defendants

assert that plaintiff's First Amendment claim must be dismissed because plaintiff was "discharged due to budget cuts and because he was not deemed by Muller to be a good fit for the job responsibilities and new work environment." (Defs.' Mem. at 7.) Even if plaintiff was discharged based upon his political affiliation, defendants assert that the termination of his employment does not violate the Constitution because "'patronage dismissals do not offend the First Amendment when restricted to policymaking positions.'" (*Id.* at 8 (quoting *Alberti v. Cnty. of Nassau*, 393 F. Supp. 2d 151, 165 (E.D.N.Y. 2005)).

"As a general rule, terminating a public employee based on his or her political affiliation offends the First Amendment." *Alberti*, 393 F. Supp. 2d at 165. "However, a public employee's First Amendment rights are not absolute, and may be outweighed by the vital government interest in 'efficiency and effective implementation of electorate-sanctioned policies.'" *Id.* at 165 (quoting *Regan v. Boogertman*, 984 F.2d 577, 579 (2d Cir. 1993)). Thus, the "policy-maker exception" permits "a public entity to terminate an employee based on political patronage without violating the First Amendment." *Almonte v. City of Long Beach*, 2009 WL 962256, at *5 (E.D.N.Y. Mar. 31, 2009) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)).

The policy-maker exception applies if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Morin v. Tormey*, 626 F.3d 40, 45 (2d Cir. 2010) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)); *see also Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("[P]olitical affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance . . . ."). The Second Circuit has explained that prohibiting employment actions based upon an employee's political affiliation in those circumstances

"would severely handicap an incoming administrator's ability to carry out his proposed policies . . . ." *Savage*, 850 F.2d at 68.

"The determination of whether an employee is a policy-maker is a question of law, although it involves a fact-intensive inquiry." *Almonte*, 2009 WL 962256 at *5. Such "inquiry generally requires consideration of the duties of the office as set forth in the job description, as well as applicable regulations." *Morin*, 626 F.3d at 45 (internal citations omitted.) In addition, the Second Circuit has outlined several other relevant factors:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence of expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived to be a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Venzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994).

Defendants argue that plaintiff fits the description of a "policy-maker" because "[a]lthough [his] responsibilities were largely clerical and administrative, the nature of this position was confidential and he reported directly to Muller, a policymaker." (Defs.' Mem. at 8.) Defendants also argue that plaintiff "did not have Civil Service protection," "had substantial contact with elected officials and policymakers[,] and had to answer to the political agenda of the County Administration." (*Id.* at 8-9.) According to defendants, individuals holding plaintiff's title are "authorized to 'fill in' for the Clerk [of the Legislature] and step in his shoes at meetings in his absence." (*Id.* at 9.)

While the facts adduced during discovery may ultimately support defendants' description of the nature of plaintiff's position, on a Rule 12(b)(6) motion the Court must accept the facts as

they are pled in the complaint. Here, plaintiff alleges that his position as "Special Assistant to the Clerk of the Legislature" was a "bi-partisan position for which no party affiliation [was] needed." (Compl. ¶ 43.) Further, even after his title changed from "Records Clerk" to "Special Assistant to the Clerk," plaintiff asserts that his duties remained entirely clerical and administrative. (*Id.* ¶¶ 16-17.) Based on the allegations contained in the Complaint, the Court cannot conclude, as a matter of law, that plaintiff's position was a "policymaking position" that would exempt defendants from liability under the First Amendment. *See Alberti*, 393 F. Supp.2d at 165. Accordingly, that portion of defendants' motion seeking to dismiss Count I of the Complaint is denied.

### B. *Plaintiff's Fourteenth Amendment Due Process Claim is Dismissed*

In Count II of the Complaint, plaintiff alleges that defendants have violated his due process rights by "conditioning employment decisions on political affiliation, protected speech, and by denying procedural due process rights." (Compl. ¶ 56.) Defendants assert that plaintiff "was an at-will employee and therefore could not have a [constitutionally-protected] property right in his current or continued employment." (Defs.' Mem. at 10.) More specifically, defendants assert that plaintiff "has not pled that he is ***not*** an at-will employee and entitled to continue his employment." (*Id.* at 5 (emphasis in the original)). Plaintiff counters that he "has no obligation to plead a negative." (*See* Pl.'s Opp'n. at 7.)

"In order to assert a violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.' " *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (quoting *Local 342, Long*

*Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194

(2d Cir. 1994)) (alteration in the original). "To have a property interest in a benefit, a person

clearly must have more than an abstract need or desire for it . . . He must, instead, have a

legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577

(1972). The Supreme Court has determined that property interests "are not created by the

Constitution." *Id.* "Rather they are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law . . . ." *Id.*

　　Plaintiff contends that "the complaint addresses his interest in his continued

employment." (Pl.'s Opp'n at 7.)  It is well-settled however, that "there is no constitutionally-

protected interest in the continuation of at-will employment in New York." *Alberti*, 393 F.

Supp.2d at 162 (citing *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 609 (2d Cir. 1983)).

Moreover, in New York, there is a strong presumption that all employment is at-will, and

therefore "terminable at any time by either party." *Baron v. Port Auth of N.Y. & N.J.*, 271 F.3d

81, 85 (2d Cir. 2001) (internal quotation marks omitted).

　　While the at-will presumption may be overcome in some instances, *see e.g., Stamelman v.

Fleishman-Hillard, Inc.*, 2003 WL 21782645, at *4 (S.D.N.Y. July 31, 2003) (citing *Weiner v.

McGraw-Hill*, 57 N.Y.2d 458, 465–66 (1982)), a plaintiff bears the burden to plead allegations

sufficient to overcome the presumption. *See Cooper v. Metro. Transp. Auth.*, 2006 WL 1975936,

at *6 (S.D.N.Y. July 14, 2006) (dismissing due process claim when plaintiff's allegations were

"insufficient . . . to overcome the presumption of at-will employment")  Here, plaintiff has failed

to plead sufficient facts to overcome the strong presumption that he was an at-will employee and,

thus, he has failed to identify any constitutionally-protected property right in his continued

employment.[3]  Accordingly, that portion of defendant's motion seeking to dismiss Count II of the Complaint is granted and plaintiff's Fourteenth Amendment due process claim is dismissed.

### C.     Section 1983 Claims Against County Executive Mangano

Defendants assert first that "all causes of action against co-Defendant Edward P. Mangano in his official capacity as County Executive should be dismissed as his inclusion as a Defendant is redundant and 'functionally equivalent' to a lawsuit against the County of Nassau." (Defs.' Mem. at 14.)  "A suit against an officer is his official capacity is essentially a suit against the government entity itself."  *Obilo v. City Univ. of City of N.Y.*, 2003 WL 1809471, at *12 (E.D.N.Y. Apr. 7, 2003) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, n.55 (1978)). Thus, to the extent plaintiff's First Amendment claim contained in Count I is asserted against Mangano in his official capacity, it is dismissed as duplicative of the First Amendment claim asserted against the County.

As for plaintiff's First Amendment claim asserted against Mangano in his individual capacity, "[i]t is well-settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Middleton v. City of New York*, 2006 WL 1720400, at *13 (E.D.N.Y. June 19, 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotation marks omitted, second alteration in the original).  Moreover, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  *Black*

---

[3] Plaintiff's citation to *Agugliaro v. Brooks Bros., Inc.*, 802 F. Supp. 956, 963 (S.D.N.Y. 1992), is unavailing. (*See* Pl.'s Opp'n at 7.)  The cited portion of *Agugliaro* deals with a state law claim for tortious interference with contract, and does not address whether a plaintiff's at-will status impacts his property interest in continued employment.

*v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Defendants argue that "the authority to hire and fire individuals for the position of Special Assistant to the Clerk of the Legislature lies exclusively with the Clerk of the Nassau County Legislature and not with the County Executive," and, therefore, Mangano "could not have any input into the decision to discharge Plaintiff." (Defs.' Mem. at 15.)

These facts are not, however, pled in the Complaint and the Court declines to consider them as part of the present motion to dismiss. The Complaint details the relationships between Mangano and his co-defendants and avers that they each conspired to terminate plaintiff's employment based upon plaintiff's political affiliation. The Complaint makes clear that Mangano "knew that Mr. Fishman was terminated based on [his] political association and approved, agreed to, and/or directed such termination." (Compl. ¶ 32.) The Court finds that plaintiff has sufficiently alleged Mangano's personal involvement in the asserted violation of his First Amendment rights, and declines to dismiss Count I as against Mangano in his individual capacity.

### D.    *Plaintiff's Claim Purporting to Assert a "Violation of 42 U.S.C. 1983" is Dismissed*

Count III of the Complaint is entitled "Violation of 42 U.S.C. 1983." As noted above, "Section 1983 does *not* create any substantive rights, and thus 'one cannot go into court and claim a "violation of § 1983" – for § 1983 by itself does not protect anyone against anything.'" *Alberti*, 393 F. Supp.2d at 161 (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)) (emphasis in the original). Thus, to the extent plaintiff is purporting to assert a claim based solely upon a "[v]iolation of 42 U.S.C. § 1983," such a claim must be dismissed. *See id.*

### E. Plaintiff has Adequately Pled a Section 1983 Conspiracy Claim

Count III of the Complaint does, however, contain a specific allegation that: "By conspiring with Mondello, the Chairman of the Nassau County Republican Committee, and each other, the defendants deprived Fishman of the right to freely associate and affiliate by terminating him on the basis of his political affiliation, association, and speech while acting under color of state law." (Compl. ¶ 65.) The Court construes this allegation as an asserted Section 1983 conspiracy claim.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 2009). Although the parties have not addressed the extent to which the Complaint contains sufficient allegations of a Section 1983 conspiracy to violate plaintiff's First Amendment rights, the Court finds that plaintiff has stated such a claim.[4] He has alleged, *inter alia*, that Schmitt and Muller (state actors) conspired with Mondello (a private individual) to act in concert to terminate plaintiff's employment based upon his political affiliation in violation of his First Amendment rights. Accordingly, to the extent Count III asserts a Section 1983 conspiracy claim, defendants' motion is denied.

---

[4] Plaintiff alleges that Mondello and the defendants also conspired to violate his Fourteenth Amendment due process rights "by terminating him without a hearing while . . . acting under color of state law." (Compl. ¶ 64.) Because plaintiff has failed to sufficiently allege any due process violation in the first instance (*see* Section II.B, *supra*), he cannot maintain a Section 1983 conspiracy claim on this ground.

### III.    Plaintiff's Section 1985(3) Claim

To state a cause of action under Section 1985(3), a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)) (internal quotation marks omitted).   "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)) (internal quotation marks omitted).

The Court notes as a threshold matter that "[a]bsent a valid predicate violation of § 1983, Plaintiff cannot pursue a § 1985(3) claim based upon the same underlying constitutional violation." *Zherka v. City of N.Y.*, 2010 WL 4537072, at *4 n. 4 (S.D.N.Y. Nov. 9, 2010); *see also O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985.")  Here, the only Section 1983 claim remaining is based upon plaintiff's allegation that defendants violated his First Amendment rights by terminating his employment based upon his political affiliation.  Thus, any alleged conspiracy would be actionable under Section 1985 only to the extent it involved a conspiracy related to this

remaining claim. In other words, plaintiff's claim that defendants conspired to deprive him of his due process rights must be dismissed. (*See* Section II(B), *supra*.)

In Count IV, plaintiff alleges that Mondello and defendants conspired to deprive plaintiff "of the right to freely associate and affiliate by terminating him on the basis of his political affiliation, association, and speech . . . ." (Compl. ¶ 71.) Defendants contend that plaintiff's Section 1985 conspiracy claim must be dismissed because plaintiff has failed to "allege any racial or class-based discrimination." (Defs.' Mem. at 11.) In opposition, plaintiff argues that "[t]he conspiracy perpetrated upon [him] is based on a view of him as a second-class citizen because he is a Democrat." (Pl.'s Opp'n at 8.) In *Keating v. Carey*, the Second Circuit found that a plaintiff, who allegedly had been fired by the defendants based on his political affiliation, could maintain a Section 1985(3) claim because his "allegations that the defendants conspired against him because he was a Republican satisfies the *Griffin* requirement under §1985(3) of class-based discriminatory animus." *Keating v. Carey,* 706 F.2d 377, 388 (2d Cir. 1983).

Subsequently, the Second Circuit recognized that dicta in an intervening decision by the Supreme Court "suggested that the scope of section 1985 might not extend to include discrimination against political groups except where that discrimination was based on racial animus." *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (citing *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 836-37 (1983)). In *Gleason* however, the Circuit did not need to re-visit its holding in *Keating* because it concluded that the plaintiff had failed to sufficiently claim discrimination based on political affiliation. *Id.* It appears, therefore, that *Keating* remains the law in this Circuit; defendants have cited (and the

Court's own research has uncovered) nothing indicating otherwise. Thus, the Court declines to dismiss plaintiff's Section 1985(3) claim on this ground.

Defendants also assert that plaintiff's Section 1985(3) claim is based upon mere "[g]eneral, vague or conclusory allegations," which are insufficient to maintain a conspiracy claim. (*See* Defs.' Mem. at 12.) Contrary to defendants' assertions, however, the Court finds that plaintiff has sufficiently pled, at the very least, that: (1) Mondello issued a directive to terminate plaintiff's employment due to his affiliation with the Democratic party, (2) Schmitt and Muller intentionally carried out this directive, and (3) Mangano and the Commission knew that plaintiff's employment was terminated because of his political affiliation and were complicit in such termination. (*See* Compl. ¶¶ 26–33.) Accordingly, that portion of defendants' motion seeking to dismiss plaintiff's Section 1985(3) claims based upon an alleged conspiracy to violate plaintiff's First Amendment rights is denied.[5]

## IV.    *Defendants' Motion to Dismiss Plaintiff's Claim Under 42 U.S.C. § 1988 is Denied*

In Count V, plaintiff asserts a claim for attorneys' fees pursuant to 42 U.S.C. § 1988. In relevant part, Section 1988 states, "In any action or proceeding to enforce a provision of sections . . . 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Defendants have not specifically addressed the sufficiency of this claim. The

---

[5]    Defendants argue that plaintiff's Section 1985 claims must be dismissed as against Mangano because such claim "fails as a matter of law." (Defs.' Mem. at 15.) To the extent that the Court has found plaintiff's Section 1985 claim to be sufficiently alleged, as set forth above, defendants' motion to dismiss that claim as against Mangano is denied.

17

Court finds, however, that to the extent plaintiff has stated valid claims pursuant to Sections 1983 and 1985, his corresponding claim under Section 1988 is properly made.[6]

## V.     *Plaintiff's New York State Constitution Claims are Dismissed*

Defendants also move to dismiss plaintiff's claims under the Constitution of the State of New York, which are contained in Counts VI and VII of the Complaint. Plaintiff brings claims under the following provisions of the New York State Constitution: Article I, §§ 8, 9 (free speech and association) and Article 1, § 11 (equal protection).

Plaintiff's claims under the New York State Constitution Article I, §§ 8 and 9 are dismissed because the New York State Constitution "is unavailable where an alternative remedy will adequately protect the interests at stake." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628-29 (S.D.N.Y. 1999). In other words, "no private right of action exists for violations of the New York State Constitution where a Plaintiff has alternative damage remedies available" under Section 1983. *See Flores v. City of Mt. Vernon*, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999). Accordingly, because plaintiff has stated a viable Section 1983 claim based upon the defendants' alleged violation of his First Amendment rights, his claims pursuant to Article I, §§ 8 and 9 of the New York State Constitution are dismissed. *See id.*

Plaintiff also asserts a claim pursuant to Article I, § 11, which "provides that '[n]o person shall be denied the equal protection of the laws of this state of any subdivision thereof.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 87 n.1 (2d Cir. 2009) (quoting Article I, § 11). The Complaint does not explicitly refer to a cause of action under Section 1983 based upon any

---

[6]     Count V contains a reference to plaintiff's potential recovery on a claim made pursuant to 42 U.S.C. § 1986. The Complaint, however, does not allege any such claim. This issue is more fully addressed in Section VIII, *infra*.

violation of plaintiff's Fourteenth Amendment equal protection rights, save for one passing reference to defendants' alleged denial of "the equal protections of the rights to free speech, free association, civil rights, and protection from retaliation and discrimination on the basis of political speech and political activities . . . ." (Compl. ¶ 58.) The parties do not provide the Court with their positions as to whether or to what extent this allegation would support an equal protection claim brought under either the Fourteenth Amendment or the New York State Constitution.

Ultimately, the Court finds that plaintiff has failed to sufficiently allege an equal protection violation pursuant to Article I, § 11 of the New York State Constitution. Plaintiff's claim under the New York State Constitution "is analyzed under the same standard" as a Fourteenth Amendment equal protection claim brought pursuant to Section 1983. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 754-55 (2d Cir. 2003). Here, whether plaintiff's equal protection claim is framed as a selective enforcement claim or a "class of one" claim, he must allege that he has been treated differently than a similarly situated comparator. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010); *Dones v. City of New York*, 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008). Here, plaintiff has failed to allege the existence of any similarly situated comparator who received differential treatment, i.e., who was not discharged due to his political affiliation. Accordingly, plaintiff's claim pursuant to Article I, § 11 of the New York State Constitution is dismissed.[7]

---

[7] For the same reasons, to the extent plaintiff's Complaint can be read to assert an equal protection claim pursuant to Section 1983, such a claim must also be dismissed.

**VI.** ***Defendants' Motion to Dismiss Plaintiff's New York Labor Law Claim is Denied***

In Count VIII of the Complaint, plaintiff alleges that defendants violated New York Labor

Law § 201-d by terminating his employment because of his political affiliation. Section 201-d of

the New York Labor Law provides, in relevant part:

> 2. Unless otherwise provided by law, it shall be unlawful for any
> employer or employment agency to . . . discharge from employment
> or otherwise discriminate against an individual in compensation,
> promotion or terms, conditions or privileges of employment because
> of:
>
> a. an individual's political activities outside of working hours, off of
> the employer's premises and without use of the employer's equipment
> or other property, if such activities are legal . . . .

N.Y. Lab. Law § 201-d (McKinney 2009). When a plaintiff demonstrates "that his termination

was improperly based on his outside political activities," the burden will shift to the defendant to

"show[ ] that plaintiff['s] political affiliations and activities did not play a substantial part in its

decision." *Shabbir v. Pakistan Int'l Airlines*, 2008 WL 938427, at *3 (E.D.N.Y. Apr. 7, 2008)

(internal quotation marks omitted, alteration added).

Defendants do not address the merits of plaintiff's Labor Law claim in their motion

papers. Rather, defendants argue that "since all of Plaintiff's federal causes of action must be

dismissed, his pendant and supplemental state law claims under . . . New York Labor Law should

be dismissed as well. (Defs.' Mem. at 15.) As noted above, however, plaintiff has sufficiently

pled certain causes of action under Sections 1983 and 1985. Moreover, given the apparently

interrelated nature of these federal claims to plaintiff's Labor Law claim, the Court finds no

reason not to exercise supplemental jurisdiction over the latter claim. *See Barry v. Town of*

*Elma*, 2004 WL 2980758, at *11 (W.D.N.Y. Dec. 23, 2004). Accordingly, that portion of defendants' motion seeking dismissal of Count VIII of the Complaint is denied.

**VII.    *Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress are Dismissed***

Plaintiff alleges that "[b]y terminating him and conspiring to terminate him on the basis of his political affiliation and activities with the Democratic Committee, Defendants intentionally and/or negligently caused Mr. Fishman severe emotional harm, which he continues to suffer today." (Compl. ¶ 81.) Defendants contend that these claims should be dismissed because plaintiff "fails to satisfy any of the elements of a claim for intentional or negligent infliction of emotional distress." (Defs.' Mem. at 13.)

"Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). "Since the alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, satisfying the outrageousness element is difficult, even at the pleadings stage." *Russo-Lubrano v. Brooklyn Fed. Savs. Bank*, 2007 WL 121431, at *6 (E.D.N.Y. Jan. 12, 2007) (internal citations and quotation marks omitted). "Particularly in the employment context, New York courts are exceedingly wary of claims for intentional infliction of emotional distress . . . because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Id.* (internal

quotation marks omitted, alteration in the original).

Accepting plaintiff's allegations as true, which the Court is bound to do at this stage of the proceedings, even if plaintiff was terminated because of his political affiliation and was required to train the individual who ultimately replaced him, these allegations are insufficient to meet the threshold for extreme and outrageous conduct necessary to sustain claims for intentional and negligent infliction of emotional distress. *See id.* at *7 (collecting cases). Accordingly, that portion of defendants' motion seeking dismissal of these claims is granted.

## VIII.   Remaining Issues

Defendants assert, without citation to legal authority, that "because of significant public policy considerations," the Complaint should be dismissed before any discovery is taken. (Defs.' Mem. at 16.) In particular, defendants contend that "[d]iscovery in this case would serve no purpose other than to burden and harass high-ranking County employees and to disclose politically sensitive information of the Republican Party to Plaintiff, a member of the Democratic Party[ ] – possibly for purposes beyond the scope of the facts of this case." (*Id.*) The Court declines, however, to dismiss plaintiff's sufficiently-alleged claims on this ground. To the extent issues of this nature arise during discovery, the parties may make any appropriate application for a protective order to Magistrate Judge A. Kathleen Tomlinson.

Finally, in his opposition papers, plaintiff requests leave to amend his complaint to the extent that any "defects in the complaint may be [cured] by alleging additional facts in support of the claim." (Pl.'s Opp'n at 12.) Plaintiff also apparently wishes to add a claim pursuant to Section 1986. (*See* Decl. of Sheila S. Hatami, Esq., dated Oct. 27, 2010 ¶ 5.) Defendants argue that plaintiff cannot possible allege any facts demonstrating that he was not an at-will employee

(a fatal defect of his due process claim) or to sufficiently allege the extreme and outrageous conduct necessary to support his intentional and negligent infliction of emotional distress claims. (*See* Reply Mem. at 10.)  To the extent plaintiff wishes to move to amend the Complaint, he may submit a pre-motion conference letter request to the Court within ten days of the date of this Order.  That letter must specify the amendments plaintiff would make to the Complaint and, if applicable, address defendants' objections as set forth above.  Defendants may submit a letter response within ten days after plaintiff's letter is filed.

### *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part.  The motion is GRANTED to the extent that: (1) plaintiff's Fourteenth Amendment due process claim, brought pursuant to Section 1983 (Count II), is dismissed in its entirety; (2) Count III is dismissed to the extent it purports to allege a "Violation of 42 U.S.C. 1983"; (3) plaintiff's Section 1985 claim (Count IV) is dismissed to the extent it is based upon an alleged conspiracy to violate plaintiff's due process rights; (4) plaintiff's New York State Constitution claims (Counts VI and VII) are dismissed in their entirety; (5) plaintiff's intentional and negligent infliction of emotional distress claims (Count IX) are dismissed in their entirety; and (5) plaintiff's First Amendment claim, brought pursuant to Section 1983 (Count I) is dismissed as against Mangano in his official capacity only.

The motion is DENIED with respect to: (1) plaintiff's First Amendment claim brought pursuant to Section 1983 (Count I), including as brought against Mangano in his individual capacity; (2) plaintiff's Section 1983 conspiracy claim (Count III); (3) plaintiff's Section 1985 claim (Count IV) to the extent it is based upon an alleged conspiracy to violate plaintiff's First

Amendment rights; (4) plaintiff's claim pursuant to Section 1988 (Count V); and (5) plaintiff

claim pursuant to New York Labor Law Section 201-d (Count VIII).

**SO ORDERED.**

Dated: September 7, 2011
      Central Islip, New York

                                       /s/_____
                                       Denis R.  Hurley
                                       Senior District Judge