UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALAN FISHMAN,

                        Plaintiff,

                v.                                    **MEMORANDUM & ORDER**
                                                      10-CV-3231 (MKB)
COUNTY OF NASSAU, NASSAU COUNTY
CIVIL SERVICE COMMISSION, THE NASSAU
COUNTY LEGISLATURE, WILLIAM MULLER
and PETER SCHMITT,

                        Defendants.
----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

        Plaintiff Alan Fishman brought the above-captioned action against Defendants County of

Nassau, Nassau County Civil Service Commission, the Nassau County Legislature, William

Muller and Peter Schmitt, alleging violations of his First Amendment and Fourteenth

Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, as well as a number of state

law claims.[1] Defendants moved to dismiss the Complaint, and Senior District Judge Denis R.

Hurley[2] granted in part and denied in part Defendants' motion. Judge Hurley dismissed

Plaintiff's Fourteenth Amendment due process claim, New York State constitutional claims, and

intentional and negligent infliction of emotional distress claims. Judge Hurley denied

Defendants' motion as to Plaintiff's First Amendment claim, §§ 1983 and 1985 conspiracy

claims, § 1988 claim and New York Labor Law claims. Defendants now move for summary

judgment on Plaintiff's remaining claims. The Court heard argument on January 22, 2013. On

_____

        [1] The Complaint also named Edward Mangano as a defendant, but Plaintiff voluntarily
withdrew his claims against Mangano on June 6, 2012.

        [2] This action was reassigned to the undersigned on March 23, 2012.

January 31, 2013, Plaintiff moved to substitute the Estate of Peter Schmitt, Lois Schmitt and

Samantha Schmitt Kennedy for Defendant Peter Schmitt, who died on October 17, 2012. For the

foregoing reasons, Plaintiff's motion to substitute is granted in part and denied in part. Lois

Schmitt, as Peter Schmitt's successor, is substituted for Peter Schmitt as a defendant in this

action. Defendants' motion for summary judgment is granted in part and denied in part.

Defendants' motion for summary judgment is denied as to Plaintiff's First Amendment and New

York Labor Law claims. Defendants' motion for summary judgment is granted with respect to

Plaintiff's §§ 1983 and 1985 conspiracy claims and all claims brought against Defendant Schmitt

in his official capacity.

## I.    Background

Plaintiff began working as a records clerk in the Clerk's Office of the Nassau County

Legislature on December 28, 2006. (Def. 56.1 ¶¶ 1, 12.) While Plaintiff was working in the

Clerk's Office, he was an active member of the Democratic Party, attending political meetings at

the Mid-Nassau Democratic Club in East Meadow. *Id.* at ¶ 13. On September 18, 2007,

Plaintiff was elected to the office of Member of the County Committee in the Town of

Hempstead (the "Democratic Committee"). *Id.* at ¶ 14. Carol Dunkel, Kate O'Hagen and Carol

Muller were also members of the Nassau County Democratic Committee and worked in the

Clerk's Office. *Id.* at ¶ 25.

When Plaintiff began working in the Clerk's Office, his job responsibilities included: (1)

copying and scanning all clerk items, which could include contracts, pieces of legislation or any

other matters to be addressed by the legislature; (2) keeping track of all of the clerk items in the

database; (3) researching passed ordinances, local laws and resolutions; (4) assisting in the set up

for legislative meetings by putting orders on the tables and making sure the tables were

available; and (5) attending legislative meetings and recording votes.  (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 18.)  Chumi Diamond, the former Clerk of the Nassau County Legislature, stated that Plaintiff's initial duties "included putting together the agendas for meetings, processing items that came in, including making copies of items and assisting in making copies of items."  (Def. 56.1 ¶ 16.)  On a few occasions, Plaintiff attended meetings with Diamond, Dave Gugerty, Michele Darcy, Sarah Flammer and Marianne Weiss.  (Pl. 56.1 ¶ 20.)  Gugerty, Darcy and Flammer all worked for Diane Yaturo, the Presiding Officer at that time.  *Id.*  Weiss, according to Plaintiff, is a Republican who worked in the Clerk's Office with him.  (Pl. Aff. ¶ 21.)  The meetings were informal and involved discussions between Diamond, Gugerty, Darcy and Flammer regarding what would be put on the legislative agenda.  (Pl. 56.1 ¶ 20.)  Plaintiff was not involved in any of the discussions and his sole duty at the meetings was to write down what legislative committees were on the agenda.  *Id.*  On May 9, 2008, Plaintiff received a raise and his title changed from "Journal Clerk" to "Special Assistant to the Clerk."  (Pl. Decl. Ex. 1.)  Plaintiff's duties did not change except he assumed a more active role in running the audio/visual system used to stream the legislative meetings live.  (Diamond Dep. 18:13–20:7.)

In November of 2009, the Republicans took control of the Nassau County Legislature, and "it was common knowledge that the Clerk of the Legislature would be replaced."  (Def. 56.1 ¶ 26; Pl. 56.1 ¶ 26.)  After the election, Plaintiff claims that Jerome "Jay" Gallucio, an active member of the Republican Committee, asked Plaintiff where he intended to work in January.  (Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.)  Gallucio told Plaintiff that "they are not going to keep you."  (Fishman Dep. 108:3–4.)  After speaking to Gallucio, Plaintiff became worried about his job.  (Fishman Dep. 107:5–6.)  Gallucio was never employed by the Clerk's Office and was not involved in the hiring or firing of anyone in the Clerk's Office.  (Def. 56.1 ¶ 28.)  However,

Gallucio worked for Republicans in the Nassau County Legislature and "seemed to have substantial knowledge of how the Republican committee operated." (Pl. 56.1 ¶ 27; Fishman Dep. 107:5–11, 108:24–109:11.) According to Plaintiff, Gallucio worked closely with Defendant Schmitt and served as his legislative aide on many occasions. (Pl. 56.1 ¶ 29.)

Defendant Schmitt was appointed by the Nassau County Legislature to the position of Presiding Officer. (Def. 56.1 ¶ 3.) Defendant Muller replaced Diamond as the Clerk of the Nassau County Legislature. (Def. 56.1 ¶ 4.) Defendant Muller visited the Clerk's Office in December of 2009. (Def. 56.1 ¶¶ 4, 40; Pl. 56.1 ¶ 40.) Plaintiff provided Defendant Muller with a copy of his resume, which listed his duties as follows: (1) creating agendas and calendars for legislative meetings; (2) researching ordinances, resolutions and local laws; (3) organizing and maintaining databases of all current legislation, meeting documents and meeting minutes; (4) implementing computerized scanning of Clerk's Office documents to minimize the need for paper documents; and (5) working for all nineteen Nassau County Legislators on a daily basis. (Def. 56.1 ¶ 43.) At Defendant Muller's request, Plaintiff also provided an itemized list of his duties, which included among other things: (1) create agendas for each legislative meeting; (2) attend all legislative meetings for the Clerk's Office; (3) record votes for all meetings; (4) research past legislation, including ordinances, local laws and resolutions; and (5) deal with Newsday on a daily basis in order to publish proposed ordinances and local law hearings prior to each legislative meeting and emergency resolutions and bond ordinances after each legislative meeting. *Id.* at ¶ 44.

In December of 2009, three new hires were brought on in the Clerk's Office — Janice Pinto, Barbara Janowitz and Crystal Albert. (Pl. 56.1 ¶ 49; Fishman Dep. 180:4–18.) All of these individuals were Republicans. (Fishman Dep. 178:2–5.) Janowitz was the wife of a

Republican judge, and Pinto was the wife of a Republican councilman. (Fishman Dep. 154:11–13.) Defendant Schmitt hired Albert on December 24, 2009 and Janowitz on December 28, 2009, as legislative aides. (Pl. Decl. Exs. 6, 7.) Soon after, if not immediately, Albert and Janowitz were transferred to the Clerk's Office.[3] (Pl. 56.1 ¶ 49.) Plaintiff, Dunkel, and Carol Muller were instructed to train the new hires. (Fishman Dep. 180:4–11.) Plaintiff testified that Defendant Muller told Plaintiff that the original plan was to fire Plaintiff, Dunkel and Carol Muller right away, but Defendant Schmitt told Defendant Muller, "you can't fire all these people because who's going to train my new staff?" (Fishman Dep. 181:16–24.)

After learning about the new hires, Plaintiff asked Christina Brennan, Defendant Schmitt's press secretary, whether Plaintiff's job was in jeopardy. (Def. 56.1 ¶ 31; Fishman Dep. 145:7–11.) Brennan asked Plaintiff whether he was "a committee person" and offered to find out more information for Plaintiff. (Def. 56.1 ¶ 31.) In January, Plaintiff spoke to Brennan again. (Fishman Dep. 150:15–18.) Brennan told Plaintiff that she spoke to Defendant Schmitt directly and told Defendant Schmitt "how helpful [Plaintiff had] been to her and to the Republicans for the last three years in the building." (Fishman Dep. 150:20–24.) Brennan informed Plaintiff that she had heard from either Defendant Schmitt or another Republican that Defendant Schmitt had concerns about keeping Plaintiff, given his active contributions to the Democratic Party. (Pl. 56.1 ¶ 30.) Brennan recommended that Plaintiff withdraw his involvement in the Democratic Party in order to save his job. (Pl. 56.1 ¶ 30; Fishman Dep. 152:19–21.) On one occasion, Defendant Muller asked Plaintiff to accompany him to a Republican ceremony. (Pl. 56.1 ¶ 45.) Plaintiff thought that he was attending the meeting to

---

[3] It is not clear from the record whether these employees were immediately transferred to the Clerk's Office or, in fact, only ever worked in the Clerk's Office and Defendant Schmitt simply added them as legislative aides to add them to the payroll before he became the Presiding Officer.

operate the audio/visual equipment, but at the ceremony Defendant Muller continuously introduced Plaintiff to individuals who were associated with the Republican Party. *Id.* Plaintiff felt very uncomfortable at the meeting. *Id.* After the meeting, Defendant Muller suggested to Plaintiff that he join the Republican clubs that the people at the meeting belonged to, but Plaintiff informed Defendant Muller that he was already a member of a Democratic club. *Id.* Plaintiff also testified that on several occasions Defendant Muller would come into the area where Plaintiff worked and discuss participation in Republican clubs. (Fishman Dep. 208:3–14.)

On January 11, 2010, Carol Dunkel, a Democratic Committee member, was terminated. (Def. 56.1 ¶ 47; Fishman Dep. 160:25–161:2.) Dunkel was replaced by Janowitz, the wife of a Republican judge. (Pl. 56.1 ¶ 47.) Defendant Muller testified at his deposition that he learned that Plaintiff had called Janowitz a "Republican hack" and told her that she should quit her job because she does not need it since her husband is a judge. (Def. 56.1 ¶ 47.) Defendant Muller ordered Plaintiff to apologize to Janowitz. *Id.* at ¶ 48. Defendant Muller claims that he planned to fire Plaintiff that day, but Janowitz asked Defendant Muller not to terminate Plaintiff. *Id.* Plaintiff disputes Defendant Muller's version of the events, noting that Defendant Muller was not even present for Plaintiff's conversation with Janowitz. (Pl. 56.1 ¶ 47.) Plaintiff claims that after Dunkel was terminated, Janowitz was upset and approached Plaintiff. *Id.* Janowitz told Plaintiff that she did not want anyone to get fired because of her, and Plaintiff responded that maybe she could speak to her husband or Defendant Muller and do something about it. *Id.* Plaintiff denies calling her a Republican hack. *Id.*

Plaintiff spoke to Defendant Muller about his job security on various occasions. *Id.* at ¶ 45. Defendant Muller repeatedly told Plaintiff that Defendant Schmitt was not allowing Defendant Muller to keep Plaintiff. *Id.* at ¶ 30. Plaintiff testified that, in late January or early

February, Defendant Muller offered to talk to Defendant Schmitt on Plaintiff's behalf. (Fishman Dep. 209:5–15.) Defendant Muller told Plaintiff that he was "trying to keep [Plaintiff]." (Fishman Dep. 194:16–195:2.) Defendant Muller expressed concern for Plaintiff because of the new people coming into the Clerk's Office and told Plaintiff that "it was not [Muller's] decision." (Fishman Dep. 195:3–8.) Defendant Muller told Plaintiff that Defendant Schmitt had said, "[s]top asking me about Alan. He's going to be fired." (Fishman Dep. 220:5–8.) Defendant Muller terminated Plaintiff on February 22, 2010. (Def. 56.1 ¶ 50.) Defendants claim that Plaintiff was being terminated for budgetary reasons and that Defendant Muller made the decision alone. *Id.* On February 22 and 23, 2010, Plaintiff had two discussions with Ed Ward, who Plaintiff understood to have the unofficial title of spokesman for Defendant Schmitt, where Ward stated either "[w]e don't keep committee people" or "[t]hey don't keep committee people." (Def. 56.1 ¶ 52; Pl. 56.1 ¶ 52.) O'Hagen, another Democratic Committee member working in the Clerk's Office, left on her own accord. (Def. 56.1 ¶ 54.) Defendant alleges that a number of Democrats remained employed by the Clerk's Office, including Linda Vocatura, Kristen Bonfonte, Carol Muller, Mary Anne Weiss and Ed Molina. *Id.* at ¶ 55. However, Plaintiff testified that Carol Muller was transferred to a different position and did not have a desk for a while. (Fishman Dep. 187:17–189:22.) Plaintiff also notes that Weiss is a Republican, and, although the remaining employees are Democrats, with the exception of Defendant Muller, they are not Democratic Committee members. (Pl. 56.1 ¶ 55.)

## II. Defendants' Motion for Summary Judgment
### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of*

*Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). The Second Circuit has made clear that "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).

### b. First Amendment Retaliation

Plaintiff alleges that he was terminated because of his political affiliation in violation of his rights under the First Amendment. "Generally, public employees may not be discharged for exercising their First Amendment rights, including the right to freedom of association." *Butler v. N.Y. Dep't of Law*, 211 F.3d 739, 743 (2d Cir. 2000) (citing *Elrod v. Burns*, 427 U.S. 347, 360 (1976)); *see also Regan v. Boogertman*, 984 F.2d 577, 579 (2d Cir. 1993) ("As a general rule, the dismissal of a public employee for purposes of political patronage infringes on the employee's First Amendment rights."). However, in certain circumstances political affiliation is a legitimate consideration in making employment decisions. *Branti v. Finkel*, 445 U.S. 507, 518–19 (1980);

*Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007). Defendants argue that Plaintiff's First Amendment claim must be dismissed because (1) Plaintiff cannot make out a prima facie case of retaliation on the basis of political affiliation, and (2) political affiliation is a permissible consideration in Plaintiff's job. (Def.[4] Mem. 4, 8.) Drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has established a prima facie case of retaliation and that his position at the Clerk's Office does not fall within the policymaker exception.

### i. Prima Facie Case

In order to make out a First Amendment claim for political discharge, the plaintiff must establish that (1) he or she engaged in constitutionally protected conduct, and (2) that such conduct was a "substantial or motivating factor leading to dismissal." *Vezzetti v. Pellegrini*, 22 F.3d 483, 487 (2d Cir. 1994); *see also Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 47 (2d Cir. 2012) ("To make out a prima facie case of First Amendment retaliation, a public employee must show that 'he has engaged in protected First Amendment activity, he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action.'" (citation omitted)), *cert. denied*, 133 S. Ct. 527 (2012). Defendants argue that Plaintiff cannot demonstrate circumstances that support an inference that Plaintiff's political affiliation was a substantial or motivating factor of his dismissal. (Def. Mem. 4–5.)

The Republicans took control of the Nassau County Legislature in November of 2009, and in December of 2009, Defendant Schmitt hired three new Republican employees to work in the Clerk's Office. (Def. 56.1 ¶ 26; Pl. 56.1 ¶¶ 26, 49; Fishman Dep. 180:4–18.) Plaintiff

---

[4] All of the Defendants have adopted Defendant Schmitt's memorandum of law and reply memorandum; therefore, the Court will refer to Defendant Schmitt's memorandum of law as "Def. Mem." and Defendant Schmitt's reply as "Def. Reply."

testified that these individuals were not qualified for the positions that they were given and were not able to successfully perform all aspects of the job, even after being trained.  (Fishman Dep. 209:21–215:15.)  Plaintiff also testified that Defendant Muller had told Plaintiff that Defendant Schmitt referred to these new hires as "my new staff."  (Fishman Dep. 181:16–24.)  Defendant Muller also took Plaintiff to an event attended exclusively by Republicans and suggested that Plaintiff join the Republican clubs.  (Pl. 56.1 ¶ 45.)  Plaintiff was terminated less than four months after the election for "budgetary reasons," even though just two months before Plaintiff's termination, Defendant Schmitt hired three new Republican employees to work in the Clerk's Office.  Of the four Democratic Committee members working in the Clerk's Office, two were terminated and replaced with Republicans, one transferred out of the Clerk's Office and the fourth was transferred within the Clerk's Office to a position where she did not have a desk for a period of time.  (Def. 56.1 ¶¶ 47, 50, 54; Fishman Dep. 160:25–161:2, 187:17–189:22.)

Defendants argue that Plaintiff was terminated for legitimate business reasons.  (Def. Mem. 5.)  Defendants claim that Defendant Muller "made a decision to add three people to the new reorganized office, and he had to make cuts to come within his budget."  *Id.*  Plaintiff has presented evidence that the budget issues, to the extent they existed, only occurred because a month earlier Defendants hired three Republican employees to work in the Clerk's Office.  (Fishman Dep. 209:21–215:15.)  In fact, Defendants argument acknowledges that the addition of three new people to reorganize the office necessitated making cuts in the budget.  (Def. Mem. 5.)  Plaintiff has presented evidence that these individuals were not hired to "reorganize" the Clerk's Office but rather to replace the existing Democratic Committee employees with Republicans.  (Fishman Dep. 181:16–24.)

A jury could infer from the evidence in the record that Defendants, knowing that they could not terminate Plaintiff on the basis of his affiliation, decided to hire a number of Republicans as legislative aides, immediately transfer them to the Clerk's Office and then terminate the most active Democrats under the guise of "budgetary" concerns just four months after the election. Drawing all inferences in favor of Plaintiff, the Court finds ample evidence that Plaintiff's political affiliation was a "substantial and motivating factor" in his termination. *See, e.g.*, *Juncewicz v. Patton*, No. 01 Civ. 519, 2002 WL 31654957, at *4 (W.D.N.Y. Oct. 8, 2002) (denying the defendants' summary judgment motion where the plaintiff's termination closely followed her protected activity and a genuine issue of fact existed as to whether the defendants had political animus towards the plaintiffs).

### ii.  Policymaker Exception

Defendants next argue that even if Plaintiff was terminated because of his political affiliation that decision would be lawful under the policymaker exception. (Def. Mem. 8.) The Supreme Court has held that "party affiliation may be an acceptable requirement for some types of government employment." *Branti v. Finkel*, 445 U.S. 507, 517 (1980). However, "[a]ny infringement on First Amendment interests . . . must be scrutinized under a strict standard." *Regan v. Boogertman*, 984 F.2d 577, 579 (2d Cir. 1993). "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Almonte*, 478 F.3d at 109 (alteration omitted) (quoting *Hawkins v. Steingut*, 829 F.2d 317, 320 (2d Cir. 1987)). The Second Circuit has identified factors to consider in deciding whether a position falls within the policymaker exception, including "whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the

name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders." *Almonte*, 478 F.3d at 109–10 (quoting *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994)). The Second Circuit has "condensed" the latter five factors "to ask 'whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official.'" *Butler v. N.Y.S. Dep't of Law*, 211 F.3d 739, 744 (2d Cir. 2000) (quoting *Gordon v. County of Rockland*, 110 F.3d 886, 890 (2d Cir. 1997)).

This list is not intended to be exhaustive; rather, the "proper approach is to assess all the factors in order to determine whether there is a rational connection between shared ideology and job performance." *Almonte*, 478 F.3d at 110 (citation and internal quotation marks omitted); *see also Butler*, 211 F.3d at 744 ("This list is not exhaustive, but instead serves as a guide; no one factor or group of factors is always dispositive."). The inquiry generally requires consideration of the duties of the office as set forth in the job description, not the actual duties performed by the employee at issue. *Morin v. Tormey*, 626 F.3d 40, 44–45 (2d Cir. 2010); *see also Gordon v. County of Rockland*, 110 F.3d 886, 888 (2d Cir. 1997) ("The idea that job performance (rather than job description) should control *Elrod-Branti* analysis has been consistently rejected by this court and others. . . . [T]his court's challenge is to discern the *duties inherent* in the offices held by the plaintiffs." (emphasis in original)); *Almonte v. City of Long Beach*, No. 04 Civ. 4192, 2009 WL 962256, at *6 (E.D.N.Y. Mar. 31, 2009) ("These factors are applied to the employee's job description, and not to the duties that the employee ultimately performed."). Drawing all

inferences in favor of Plaintiff, the Court cannot find as matter of law that Plaintiff's position at the Clerk's Office qualified under the policymaker exception.[5]

Plaintiff's job responsibilities were predominantly clerical and administrative. Plaintiff was responsible for copying, scanning and organizing the clerk items, creating agendas and calendars, managing the audio/visual equipment for the legislative meetings and recording votes. (Def. 56.1 ¶¶ 43–44; Def. Exs. L, M.) Plaintiff did not supervise or have control over any other employees. Moreover, there is simply no evidence in the record to find that Plaintiff is "empowered to act and speak on behalf of a policymaker." *Butler*, 211 F.3d at 744. Defendants emphasize Plaintiff's occasional attendance of majority party meetings, research assignments he was assigned and access to confidential information and argue that, "while Plaintiff may argue that his duties were ministerial in nature, clearly they could be of significant impact if such matters were disclosed to unauthorized third parties." (Def. Mem. 13.) As an initial matter, the Court notes that Plaintiff claims that he only attended a few of these "majority party" meetings that Defendants repeatedly rely on in their motion. (Pl. 56.1 ¶ 20.) Plaintiff also claims that Marianne Weiss, a Republican that worked in the Clerk's Office, attended the meetings with Plaintiff. *Id.* at ¶¶ 20, 55. In any event, the fact that Plaintiff attended a few majority party meetings, performed general research assignments and had access to confidential documents is

---

[5] Although the policymaker question is "one of law for the court" and "is not a disputed issue of fact which we are required . . . to construe in favor of the plaintiffs for whom we have official or statutory job descriptions," *Morin v. Tormey*, 626 F.3d 40, 45 n.5 (2d Cir. 2010) (alteration in original) (citation omitted), "the legal determination cannot be made without some preliminary factual inquiry." *Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir. 2007). Thus, in conducting the policymaker analysis, the court must resolve any underlying factual disputes in favor of the non-moving party. *See, e.g.*, *Morin v. Tormey*, 620 F. Supp. 2d 353, 360 (N.D.N.Y. 2009) (construing the factual disputes in favor of the plaintiff, the court found that she did not fall within the policymaker exception), *aff'd*, 626 F.3d 40 (2d Cir. 2010).

insufficient to support a finding as a matter of law that Plaintiff's position at the Clerk's Office falls under the policymaker exception.

In *Morin v. Tormey*, the Second Circuit upheld the district court's denial of summary judgment, finding an issue of fact for the jury regarding whether Morin, the Deputy Chief Clerk of the New York Unified Court System, could qualify under the policymaker exception. 626 F.3d at 44–45. The Second Circuit noted:

> Morin is exempt from civil service protection, has some technical competence (although she is not required to be an attorney), and has contact with elected judges, but she has only two employees working for her and has no hiring authority, is not authorized to speak in the name of the Defendants or other policymakers, cannot reasonably be perceived as a policymaker, does not influence government programs, and is not responsive to partisan politics. Although her job description includes consulting with judges and administrators "to develop court policy," her primary duties are managing court operations.

*Id.* at 45. Similar to the plaintiff in *Morin*, Plaintiff had some technical competence and contact with elected officials but did not have any authority to speak on behalf of the Clerk's Office or, more generally, the Nassau County Legislature. Plaintiff could not be perceived as a policymaker. Unlike Morin, who supervised two employees as the Deputy Chief Clerk, Plaintiff did not supervise or control any employees at the Clerk's Office. He had no hiring authority, was not perceived as a policymaker and had no ability to influence government programs. Plaintiff's primary duties were clerical — making copies, filing and organizing documents and providing administrative support for legislative meetings.

Drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff's minimal contacts with the majority party, occasional research and access to confidential materials cannot support a finding that there is "a 'rational connection' between [Plaintiff's] 'shared ideology' with the Defendants and [his] job performance." *Morin*,

626 F.3d at 46; *see also Cicchetti v. Davis*, No. 07 Civ. 10546, 2009 WL 222379, at *5

(S.D.N.Y. Jan. 26, 2009) (finding the policymaker exception did not apply because,

although the fire commissioner had a substantial amount of authority and supervisory

power, the defendants had not provided the court with any information indicating "that

performance of the position is rationally connected to a shared ideology"); *Krause v.*

*Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 105

(W.D.N.Y. 2005) (questions of fact precluded the court from finding that the plaintiff's

job qualified under the policymaker exception, even though her position was not entitled

to civil service protection and required technical expertise, because the plaintiff had

presented evidence that three other individuals were responsible for hiring, firing and all

policymaking decisions for the program at issue). Defendants' motion for summary

judgment with respect to Plaintiff's First Amendment claim is denied.[6]

### c. Conspiracy Claims

Plaintiff brings conspiracy claims pursuant to §§ 1983 and 1985. "To prove a § 1983

conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between

a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3)

an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200

F.3d 65, 72 (2d Cir. 1999); *Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 402 (E.D.N.Y.

2010). Plaintiff alleges that a conspiracy existed between Defendant Schmitt, Defendant Muller

and the Nassau County Republican Committee. (Pl. Opp'n 22–23.) Plaintiff alleges that the

Republican Committee recommended the three Republicans that Defendant Schmitt hired in

December of 2009. *Id.* at 24. Plaintiff argues that the "facts clearly demonstrate that Defendant

---

[6] Having found that Plaintiff has established a First Amendment claim, Plaintiff's claim for attorneys' fees pursuant to § 1988 may also proceed. *See Lore v. City of Syracuse*, 670 F.3d 127, 181 (2d Cir. 2012).

Schmitt was influenced by his ties to the Republican Party in making hiring decisions." *Id.* Such an allegation is insufficient to support a claim of conspiracy as to the Republican Committee. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Young v. Suffolk County*, No. 09 Civ. 3325, 2013 WL 491982, at *16 (E.D.N.Y. Feb. 11, 2013) (holding that the plaintiff's "unsubstantiated allegations of purported collaboration" between the private defendants and county defendants were insufficient to defeat summary judgment); *Arredondo v. County of Nassau*, No. 11 Civ. 710, 2012 WL 910077, at *6 (E.D.N.Y. Mar. 16, 2012) (dismissing complaint where the plaintiff had only made general allegations that the private actors and the county defendants had an understanding without any facts to support this claim).

Plaintiff maintains the he has a conspiracy claim against Defendants Muller and Schmitt, even if the Court does not find evidence of a conspiracy involving the Republican Committee. (Pl. Opp'n 25.) However, "it is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment." *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 413 (E.D.N.Y. 2001) (citing *Girard v. 94th Street and Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir. 1976)); *see also Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007) (affirming dismissal of the conspiracy claim where the co-conspirators were both employees of the same public library); *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010) ("The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."); *Celestin v. City of New York*,

581 F. Supp. 2d 420, 434 (E.D.N.Y. 2008) ("[W]here the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand." (citations omitted)). The intracorporate conspiracy doctrine also applies to § 1985 conspiracy claims. *See Varricchio*, 702 F. Supp. 2d at 62 (dismissing § 1985 conspiracy claim where it is undisputed that all alleged conspirators are employees of Nassau County). Since Defendants Schmitt and Muller were both employees of the Nassau County Legislature and the alleged constitutional violations occurred during the course of employment, Plaintiff's §§ 1983 and 1985 conspiracy claims must be dismissed.

### d.  New York Labor Law

New York Labor Law § 201-d provides in relevant part that "it shall be unlawful for any employer or employment agency to . . . discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privilege or employment because of . . . an individual's political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or other property, if such activities are legal." N.Y. Labor Law § 201-d(2); *see also McCue v. County of Westchester*, 868 N.Y.S.2d 902, 902 (App. Div. 2008) ("Pursuant to Labor Law § 201–d(2)(a), it is unlawful for any employer to discharge an individual from employment because of that individual's 'political activities outside of working hours.'" (citation omitted)). "When a plaintiff submits evidence demonstrating that his termination was improperly based on his outside political activities, defendant bears the burden of coming forth with admissible evidence showing that plaintiff's political affiliations and activities did not play a substantial part in its decision." *Shabbir v. Pakistan Int'l Airlines*, No. 99 Civ. 5601, 2008 WL 938427, at *3 (E.D.N.Y. Apr. 7, 2008) (alterations and internal quotation marks omitted) (quoting *Baker v. City of Elmira*, 707 N.Y.S.2d 513, 515 (App. Div. 2000))).

As an initial matter, Defendants argue that Plaintiff's New York Labor Law claim against Defendant Schmitt must be dismissed because Schmitt is not an "employer." (Def. Mem. 19.) However, "the New York State Attorney General opined that 'employer' under New York Labor Law, *see* N.Y. Labor Law § 2(6), includes officers, agents and employees of a municipality who act for the municipality in employing labor." *Barry v. Town of Elma*, No. 02 Civ. 344, 2004 WL 2980758, at *11 (W.D.N.Y. Dec. 23, 2004) (citation omitted), *report and recommendation adopted*, 2005 WL 711842 (W.D.N.Y. Mar. 28, 2005). Plaintiff has offered evidence that Defendant Schmitt had hiring and firing authority in the Clerk's Office, (Pl. Decl. Exs. 6, 7), and, therefore, an issue of fact exists as to whether Defendant Schmitt is an employer for the purposes of Plaintiff's New York Labor Law claim.[7]

Defendants next argue that Plaintiff has not offered any evidence of his participation in political activities as defined by the statute. (Def. Mem. 20.) "Section 201–d(1)(a) defines the term political activities as "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group." *Raghavendra v. Trustees of Columbia Univ.*, No. 06 Civ. 6841, 2008 WL 2696226, at *10 (S.D.N.Y. July 7, 2008); *Wehlage v. Quinlan*, 864 N.Y.S.2d 630, 631 (App. Div. 2008). Plaintiff testified that in October of 2009, he was actively campaigning for democratic candidate Dave Mejias. (Fishman Dep. 99:24–101:7.) Plaintiff would go door to door to obtain signatures, volunteer at phone banks and distribute campaign literature for various democratic candidates. (Fishman Dep. 31:3–24.) Plaintiff participated in these campaign activities with various members of the Clerk's Office, including Ed Molina,

---

[7] To the extent that Defendant Muller also argues that he is not an employer under New York Labor Law, the same reasoning applies and an issue of fact exists as to whether Muller, like Schmitt, is an employer.

Linda Vocatura and Diamond. (Fishman Dep. 46:16–49:10, 121:14–17.) In addition, Plaintiff

testified about a number of conversations with various individuals who worked at the Nassau

County Legislature who indicated that it was generally believed at the Nassau County

Legislature that Plaintiff was very active in the Democratic Party. (Def. 56.1 ¶¶ 27, 36; Pl. 56.1

¶¶ 27, 30.) Plaintiff also informed Defendant Muller that he was a member of a Democratic

club. (Pl. 56.1 ¶ 45.) Plaintiff has offered sufficient evidence to establish that he participated in

political activities and that he was fired because of these activities.

Having found that Plaintiff can establish a prima facie case, the burden shifts to

Defendants to show that Plaintiff's "political affiliations and activities did not play a substantial

part in its decision." *Shabbir v. Pakistan Int'l Airlines*, 2008 WL 938427, at *3. Defendants

maintain that Defendant Muller has established a "plausible and rational basis" for Plaintiff's

termination and, therefore, "if political activities played any pert [sic] in the termination decision,

they did not play a 'substantial' part." (Def. Mem. 20–21.) As the Court discussed with respect

to the First Amendment claim, Plaintiff has provided sufficient evidence from which a jury could

infer that his political activities and affiliation were a substantial factor in his termination. *See*

*Giacopelli v. Inc. Vill. of Malverne*, 829 F. Supp. 2d 131, 146 (E.D.N.Y. 2011) (finding that the

plaintiff has stated a claim under New York Labor Law for discriminatory discharge for the same

reasons set forth with respect to the plaintiff's § 1983 first amendment retaliation claim).

Defendants' motion for summary judgment with respect to Plaintiff's New York Labor Law

claim is denied.

### e. Individual Defendants
#### i. Defendant Schmitt
##### 1. Official Capacity

Defendant Schmitt argues that he cannot be held liable in his official capacity under New York County Law ("County Law") § 54. (Def. Mem. 22.) County Law § 54 states in relevant part that "[n]o head of any agency, department, bureau, or office of a county shall be liable to respond in damages to the county or to any other person for any act or omission of any employee of the county employed within the agency, department, bureau, or office of which he is such head." N.Y. County Law § 54. Plaintiff argues that County Law § 54 does not apply in this action because County Law § 941 states that "[t]he provisions of sections fifty-two, fifty-three and fifty-four of this chapter shall apply to the counties constituting the [C]ity of New York." N.Y. County Law § 941. However, as Defendants point out, County Law § 2 states that the County Law "shall not apply to a county wholly contained within a city, *unless specifically so provided*." N.Y. County Law § 2(b) (emphasis added). Thus, § 941 is intended to specifically provide, in accordance with § 2, that §§ 52, 53 and 54 apply to the City but does not indicate that these provisions apply exclusively to the City. N.Y. County Law § 941. Courts have repeatedly applied these enumerated provisions in cases involving Nassau County. *See e.g.*, *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008) (applying County Law § 52); *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (same).

Accordingly, County Law § 54 prohibits an action against Defendant Schmitt in his official capacity as the Presiding Officer of the Nassau County Legislature for the acts or omissions of his employees or those he supervises. Plaintiff's claims against Defendant Schmitt in his official capacity must be brought against the County itself. *See Feingold v. Hankin*, 269 F. Supp. 2d 268, 274 (S.D.N.Y. 2003) (dismissing claims pursuant to § 54 because "[t]o the extent

that the [individual defendants] are being sued in their official capacities — and the only claims stated against them arise out of their official duties as Trustees — they are not proper parties to this lawsuit"); *Tucker v. City of New York*, 709 N.Y.S.2d 796, 797 (Sup. Ct. 2000) (dismissing the plaintiff's claims against the district attorney because the district attorney "is an independently elected county officer who heads a county office or agency and who acts through his appointed assistants" and § 54 "bars the naming of a district attorney, whether by individual name or by title, as a defendant in a negligence action based on the acts of his office"); *Torres v. City of New York*, 959 N.Y.S.2d 859, 866 (Ct. Cl. 2013) ("Plaintiffs' allegations against [the police commissioner], properly construed, concern his official duties as head of the NYPD. As such, the municipality is the real party in interest, not Commissioner Kelly."). Plaintiff's claims against Defendant Schmitt in his official capacity are dismissed.

### 2. Individual Capacity

Defendant Schmitt argues that he cannot be found liable in his individual capacity for any § 1983 claims because Plaintiff has failed to offer any evidence of his personal involvement in Plaintiff's termination. (Def. Mem. 21–22.) "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d. Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). Here, Plaintiff has offered sufficient evidence of Defendant Schmitt's personal involvement. Defendant Schmitt was directly involved in the hiring of two of the three Republicans in December of 2009. (Pl. Decl. Exs. 6, 7.) Although Defendants originally planned to fire Plaintiff, Dunkel and Carol Muller immediately, Defendant Schmitt told Defendant Muller, "you can't fire all these people because who's going to train my new staff?" (Fishman Dep. 181:16–24.) According to Plaintiff, Defendant Muller told Plaintiff that he was

"trying to keep [Plaintiff]" and that he had "gone to Peter Schmitt on [Plaintiff's] behalf." (Fishman Dep. 194:16–195:2.)  Defendant Muller expressed concern for Plaintiff, given the new people coming into the Clerk's Office, and told Plaintiff that "it was not [Muller's] decision." (Fishman Dep. 195:3–8.)  Plaintiff testified that Defendant Muller told Plaintiff that Defendant Schmitt said to him, "Stop asking me about Alan.  He's going to be fired."  (Fishman Dep. 220:5–8.)  Plaintiff has offered sufficient evidence of Defendant Schmitt's personal involvement to support his § 1983 claim.

### 3.  Qualified Immunity

Defendants Schmitt and Muller argue that they are entitled to qualified immunity on Plaintiff's § 1983 First Amendment claim.  (Def. Mem. 22–23.)  In order to establish that they are entitled to qualified immunity, Defendants must "establish that it was objectively reasonable for them to believe that [Plaintiff] was a policymaker." *Morin*, 626 F.3d at 46 (citing *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir. 1998)).  A government official's actions will be considered objectively reasonable if "officers of reasonable competence could disagree on the legality of defendant's actions." *McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012) (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).  In making this determination, the court considers "whether any reasonable jury 'looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[s]' to believe that their actions were not clearly violating the plaintiffs' established federally protected rights." *Danahy*, 134 F.3d at 1190 (quoting *Lennon*, 66 F.3d at 420); *see also Gibbons v. County of Suffolk*, No. 10 Civ. 4938, 2011 WL 6257137, at *4 (E.D.N.Y. Dec. 12, 2011) ("Qualified immunity applies if the court holds that no reasonable jury could conclude that it was objectively unreasonable for the defendant to

believe that his actions did not violate a clearly established right.").  Viewing the facts in the light most favorable to Plaintiff, a jury could conclude that it was objectively unreasonable for Defendants to believe that they could fire Plaintiff because of his political affiliation.

As discussed, Plaintiff has provided sufficient evidence from which a jury could find that he was terminated because of his political affiliation and that the termination violated his First Amendment rights because his position does not qualify for the policymaker exception. Nevertheless, Defendants are entitled to qualified immunity if they can establish that it was objectively reasonably for them to believe that Plaintiff's job fell within the policymaker exception and, thus, he could be fired on the basis of his political affiliation.  *See Morin*, 626 F.3d at 46.  Defendants argue that they had "a reasonable basis to assume that, since Plaintiff worked very closely with the Legislature's Clerk, who worked very closely with the party in power, namely, the Republicans, on confidential policymaking matters, and he was an individual who demonstrated a formal affiliation with the party out of power and therefore posed a potential political risk, he was thus properly subject to termination on that basis."  (Def. Mem. 23.) Although Plaintiff interacted with all of the legislators, he had minimal exposure to closed-door meetings with the majority party.  (Pl. 56.1 ¶ 20.)  Plaintiff did not have any involvement with confidential policymaking matters.  *Id.*  For the most part, Plaintiff's work in the Clerk's office involved copying, scanning and filing clerk items, organizing and maintaining the current legislation database, creating agendas and calendars and running the audio/visual equipment for legislative meetings.  (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 18.)

A jury could find in light of Plaintiff's predominantly administrative and clerical duties that it was not objectively reasonable for Defendants Schmitt and Muller to believe that there was a "rational connection" between "shared ideology" and Plaintiff's job performance.  *See*

*Morin*, 626 F.3d at 46 ("While . . . a few of the factors relevant to determining policymaker status pointed toward that status, the Defendants have failed to present any evidence to establish a reasonable belief in the fundamental point: that Morin's job legitimately required political affiliation, that is, that there was a 'rational connection' between her 'shared ideology' with the Defendants and her job performance."); *Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 391 (W.D.N.Y. 2006) (holding that a jury could find that the defendants "could not have objectively believed" that they were not violating the plaintiff's First Amendment rights by "creat[ing] and maintain[ing] a policy to replace Democrats . . . with new hires who were members of political parties supportive of [Defendant] Giambra's political aspirations, or friends and relatives of [Defendant] Giambra"). Defendants Schmitt and Muller are not entitled to summary judgment on the basis of qualified immunity.

### ii. Nassau County Civil Service Commission and Nassau County Legislature

Finally, Defendants argue that the claims against Defendants Nassau County Civil Service Commission and the Nassau County Legislature must be dismissed because they are agencies of Nassau County and cannot be sued. (Def. Mem. 24.) "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Rose v. County of Nassau*, No. 12 Civ. 536, 2012 WL 5467535, at *3 (E.D.N.Y. Nov. 9, 2012); *see also O'Leary v. Town of Huntington*, No. 11 Civ. 3754, 2012 WL 3842567, at *1 n.1 (E.D.N.Y. Sept. 5, 2012) ("It is well-settled that claims against administrative arms of the same municipality lack the capacity to be sued."). Two decisions rendered in this District suggest that this rule does not apply to the Nassau County Legislature or the Nassau County Civil Service Commission.

In *Nassau County Employee "L" v. County of Nassau*, United States District Judge Sandra J. Feuerstein found that the Nassau County Legislature was a suable entity because "a legislative body is not an administrative body," and, therefore, the Nassau County Legislature is not an administrative arm of the municipality. 345 F. Supp. 2d 293, 298 (E.D.N.Y. 2004). In *Williams v. County of Nassau*, United States District Judge Roslynn R. Mauskopf adopted a report and recommendation, finding that the Nassau County Civil Service Commission is a suable entity. 684 F. Supp. 2d 268, 296–97 (E.D.N.Y. 2010). The court noted that "[a]lthough Article XIII of the Nassau County Charter specifies that a department of civil service shall exist within the County and how it shall be administered; it appears that the power to create that entity is derived from the New York State Civil Service Law." *Id.* at 296. Moreover, the Court found:

> [T]he [Nassau County Civil Service Commission ("CSC")] has been a party to numerous actions in the past, as both plaintiff and defendant. An independent search by the Court found more than one hundred cases in both the federal and state courts of New York where the CSC was a named party. Unlike the case law cited by the defendants with respect to those agencies that are clearly municipal entities (e.g., county police departments), the defendants have not offered, nor did the Court's independent research produce, any cases where a court held that a county civil service commission does not have the capacity to sue or be sued.

*Id.* at 296–97. Similarly, in the instant action, Defendants have not provided any basis for this Court to find that either the Nassau County Legislature or the Nassau County Civil Service Commission cannot be sued. Defendants' motion for summary judgment with respect to Defendants Nassau County Civil Service Commission and the Nassau County Legislature is denied.

## III. Plaintiff's Motion to Substitute

Defendant Schmitt died on October 17, 2012, and his counsel filed a suggestion of death on November 8, 2012. On January 31, 2013, Plaintiff timely filed a motion to substitute the Estate of Peter Schmitt, Lois Schmitt and Samantha Schmitt Kennedy for Defendant Schmitt.

25

(Pl. Aff. Subst. ¶ 2.)  Defendant Schmitt does not dispute that Plaintiff's claims against Schmitt survive his death.  (Def. Opp'n 1–3.)  Instead, Defendant Schmitt argues that (1) Samantha Schmitt Kennedy is not a proper party, and (2) the Court should exercise its discretion and decline to substitute Lois Schmitt.  (Def. Opp'n 1–3.)

Pursuant to Rule 25 of the Federal Rules of Civil Procedure, "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Fed. R. Civ. P. 25(a)(1).  The language of Rule 25 is permissive, and "[t]he decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves."  *Natale v. Country Ford Ltd.*, 287 F.R.D. 135, 137 (E.D.N.Y. 2012) (alteration in original) (quoting *Froning's, Inc. v. Johnston Feed Serv., Inc.*, 568 F.2d 108, 110 n.4 (8th Cir. 1978)).  "Whether a person is a proper 'successor or representative' of the decedent is determined by New York law."  *Id.* (quoting *Garcia v. City of New York*, No. 08 Civ. 2152, 2009 WL 261365, at *1 (E.D.N.Y. Feb. 4, 2009)).  "A 'successor' of the deceased party is a 'distributee' of the decedent's estate if the estate has been distributed at the time the motion for substitution is made."  *Garcia*, 2009 WL 261365, at *1; *see also Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004) (same).

Defendant Schmitt's assets were left to his wife, Lois Schmitt.  (Declaration of Lois Schmitt ("L. Schmitt Decl.") at ¶ 2.)  Lois Schmitt states that there was "no need to probate [her] husband's will as all of the assets in his name were transferred automatically to [her] upon his death."  *Id.* at ¶ 8.  Samantha Schmitt Kennedy did not receive any assets from Defendant Schmitt.  *Id.* at ¶ 2.  At the time of Plaintiff's motion, all of Defendant Schmitt's assets had been distributed to Lois Schmitt.  *Id.* at ¶¶ 2–8.  Accordingly, the Court finds that Lois Schmitt is a

proper party for substitution.[8] *See Roe v. City of New York*, No. 00 Civ. 9062, 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003) (finding that the plaintiff's parents were the proper party for substitution purposes, where the plaintiff died intestate, did not have an executor or administrator of his estate, never married, had no children and his only property — his personal belongings — were distributed to his parents and his siblings); *see also Swiggett v. Coombe*, No. 95 Civ. 4916, 2003 WL 174311, at *2 (S.D.N.Y. Jan. 27, 2003) ("It is well settled that when a defendant in a § 1983 action dies, who has been sued in his individual capacity, the proper party to substitute is the successor of the deceased or the representative of his estate." (collecting cases)). Plaintiff's motion to substitute is granted with respect to Lois Schmitt, as Defendant Schmitt's successor, but denied as to the Estate of Peter Schmitt and Samantha Schmitt Kennedy. Lois Schmitt is substituted for Peter Schmitt as a defendant in this action.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to substitute is granted in part and denied in part. Lois Schmitt, as Peter Schmitt's successor, is substituted for Peter Schmitt as a defendant in this action. Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment is denied as to Plaintiff's First Amendment and New York Labor Law claims. Defendants' motion for summary judgment is granted with respect to

---

[8] Defendant Schmitt argues that substitution would be "unfair" because Schmitt "had a complete agreement of indemnification issued by the Nassau County Indemnification Board." (Def. Mem. 3.) The substitution of Lois Schmitt does not extinguish this agreement but rather preserves Plaintiff's claims against Defendant Schmitt. Without the substitution, Plaintiff's claims against Defendant Schmitt would be dismissed. However, if Lois Schmitt is substituted, Plaintiff is able to proceed with his claims against Defendant Schmitt and, if Plaintiff prevails at trial, recover from Nassau County through the indemnification agreement. *See Smith v. Thebaud*, 258 F.R.D. 207, 210 (E.D.N.Y. 2009) (allowing the plaintiff's untimely motion to substitute because to deny his motion would "work a substantial injustice" as it would "eliminate the possibility of an obvious asset to any successor in interest of [the defendant], the right to indemnification under N.Y. Public Officer's Law § 17(3)").

Plaintiff's §§ 1983 and 1985 conspiracy claims and all claims brought against Defendant Schmitt in his official capacity.  The parties are directed to submit a joint pre-trial order within 30 days of this Order.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  April 1, 2013
  Brooklyn, New York